UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

RAUL YUDIEL CASTELLANOS GUERRA, Petitioner,

v. Civil Action No. 4:26-cv-430-RGJ

MARKWAYNE MULLIN, et al., Respondents.

****

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] and motion to expedite [DE 14] filed by Petitioner Raul Yudel Castellanos Guerra ("Guerra"). The United States ("Respondents")[1] responded [DE 9; DE 16], and Guerra replied [DE 11; DE 17]. These matters are ripe. For the reasons below, Guerra's motion to expedite [DE 14] is **GRANTED** and Guerra's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED**.

**I. BACKGROUND**

Guerra is a native and citizen of Cuba. [DE 1 at 1]. He entered the United States on June 11, 2023, and was originally paroled "under one of the Parole Processes for Cuban, Haitian, Nicaraguan, and Venezuelan nationals and their immediate family members (CHNV parole programs) that began in 2022 and 2023." [DE 9-3 at 67]. The United States Department of Homeland Security ("DHS") issued Guerra a Notice of Termination of Parole on June 13, 2025. [*Id.*]. Guerra remained in the United States after his parole was terminated.

Guerra was detained by Louisville Metro Police on or about April 22, 2026 and charged with "TBUT or DISP (theft by unlawful taking or disposition) all others $1,000 < $10,000." [DE

[1] 28 U.S.C. § 517 allows the Office of the United States Attorney to make appearances in court to attend to the United States' interests. Respondents submitted responses in this case to attend "to the United States' interests to the extent that the petition also names a county official as a respondent." [DE 16 at 136 n.1].

9 at 48]. On April 23, 2026, he was taken into the custody of the U.S. Immigration and Customs Enforcement ("ICE"). [*Id.*]. Guerra was issued a Notice to Appear, charging him with being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). [*Id.*].

On June 10, 2026, an immigration judge ("IJ") denied Guerra's request for a change in custody status, explaining that Guerra was "detained under section 235(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a)." [DE 11-9]. Relying on *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025), the IJ reasoned that

> [a]n alien detained under section 235(b) of the INA, 8 U.S.C. § 1225(b), who is released from detention pursuant to a grant of parole under section 212(d)(5)(A) of the INA, 8 U.S.C. § 1182(d)(5)(A) (2018), and whose grant of parole is subsequently terminated, is returned to custody under section 235(b) pending the completion of removal proceedings.

[DE 11-9].

Guerra is currently detained by ICE at the Daviess County Detention Center, located in Owensboro, Kentucky. [DE 1 at 1]. On September 4, 2026, the criminal case against Guerra was dismissed without prejudice. [DE 17-1 at 140; DE 17-2 at 142].

## II. DISCUSSION

Guerra asserts that his continued detention is unlawful and violates his due process and statutory rights under the Immigration and Nationality Act (INA) because he is properly detained, if at all, under Section 236 of the INA, codified at 8 U.S.C. § 1226(a). [DE 1]. Section §1226(a) provides that noncitizens in removal proceedings may be detained but are eligible for release on bond. *See* 8 U.S.C. § 1226(a).

Respondents assert that the Court should deny Guerra's Petition because he is properly detained under Section 1225(b)(2) and, alternatively, Section 1226(c). [DE 9]. Both statutes

authorize mandatory detention. *See* 8 U.S.C. § 1225(b)(2)(A); 8 U.S.C. § 1226(c).

**A. 1225(b)(2)**

There is no dispute that Guerra was lawfully paroled into the United States or that Guerra's parole has since expired. The question is which detention statute(s) properly apply to Guerra, who has resided within the United States since 2023. If § 1226(a) applies, then Guerra was entitled to an individualized custody redetermination hearing, at which time the IJ was required to evaluate whether there is a risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1)). Here, Guerra did not receive this hearing because the IJ found that Guerra was ineligible for release on bond pursuant to § 1225(b)(2). [DE 11-3].

Guerra argues that the Sixth Circuit's holding in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) is controlling. In that case, the court of appeals held that mandatory detention of certain noncitizens "already present in the United States" who were not "seeking admission" was unlawful, and that the petitioners were properly detained, if at all, pursuant to § 1226(a). *Lopez-Campos*, 175 F.4th at 732 (explaining "§ 1226 applies to aliens already present in the United States" and "creates a default rule for those aliens . . . .").

Nevertheless, Respondents contend that *Lopez-Campos* is inapplicable because that "case dealt with individuals who did not apply for admission and who were not granted parole under 8 U.S.C. § 1182(d)(5), unlike [Guerra]." [DE 9 at 48]. Responds ask the Court to follow the court's reasoning in *Jean v. Bullock*, No. 2:26-CV-02571-BCL-ATC, 2026 WL 1531056 (W.D. Tenn. May 30, 2026), which similarly distinguished *Lopez-Campos*. Consistent with *Jean*, Respondents argue that Guerra is an "arriving alien" who received parole and therefore remains at all times an "alien seeking admission" within meaning of 8 U.S.C. § 1225(b)(2)(A). [*Id.* at 48–50 ("Because [Guerra] was encountered at a port of entry and paroled, he falls outside of *Lopez-Campos*'s

definition of Section 1226(a) and within Section 1225(a)(1)'s definition of 'applicants for admission' subject to mandatory detention under Section 1225(b)(2)(A).")].].

Respondents' argument rests on a legal concept known as the "entry fiction" doctrine. As the Sixth Circuit has explained, "[t]his paradox of paroling aliens into the United States yet refusing to recognize their 'entry' into the United States has been termed the 'entry fiction' by some courts." *Rosales–Garcia v. Holland*, 322 F.3d 386, 391 n.2 (6th Cir. 2003). The doctrine stems from the notion that "an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). In *Mezei*, the Supreme Court created an "entry fiction," which extended this distinction to some individuals in the interior of the United States but who, as a result of their status, are deemed technically on the threshold of entry.

The entry fiction doctrine is further reflected in the relevant federal regulation. Regulation defines an "arriving alien" as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. *An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act* [codified at 8 U.S.C. § 1182(d)(5)(A)], *and even after any such parole is terminated or revoked.*

8 C.F.R. 1001(q) (emphasis added). Indeed, as Respondents note, the Sixth Circuit has stated in dicta that "an arriving alien remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked." *Rais v. Holder*, 768 F.3d 453, 456 n.4 (6th Cir. 2014) (citing 8 C.F.R. § 1001.1(q)). Moreover, "[w]hen a Section 1182 humanitarian parole terminates, 'the alien shall forthwith return or be returned to the custody from which he was paroled[,] and thereafter his

case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Daza v. Albarran*, No. 25-cv-10214-RFL, 2026 WL 81518, at *3 (N.D. Cal. Jan. 12, 2026) (quoting 8 U.S.C. § 1182(d)(5)(A)). *Cf. Martinez v. U.S. Atty. Gen.*, 577 F. App'x 969, 973 (11th Cir. 2014) (citing 8 C.F.R. § 212.5(e)) ("When parole is terminated, the paroled alien is restored to the status that he or she had at the time of parole and becomes subject to removal proceedings.").

Thus, Respondents conclude, upon termination of Guerra's parole, all the circumstances which require applying § 1225(b)(2) were necessarily met: Guerra was restored to (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2).

Yet courts in the Sixth Circuit are divided on whether, on expiration of their parole, noncitizens like Guerra who are present in the interior of the country are subject to mandatory detention under § 1225(b)(2). *Compare Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941, at *11 (W.D. Ky. Apr. 6, 2026) (finding section 1225(b)(2) applies because "upon the termination or expiration of an alien's parole, that alien is returned to the status they held at the time of their parole, that is, the status under which they were subject to the 'immediate charge and control' of DHS"), *Gonzalez Crispin v. Olson*, No. 4:26-CV-308-CHB, 2026 WL 1430506, at *4 (W.D. Ky. May 21, 2026) (accord), *Jean*, 2026 WL 1531056, at *3 (Petitioner thus falls without *Lopez-Campos*'s definition of Section 1226(a) and within Section 1225(a)(1)'s definition of 'applicants for admission' subject to mandatory detention under Section 1225(b)(2)(A)"), *with Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-CV-632, 2026 WL 1109422, at *5 (N.D. Ohio Apr. 24, 2026) ("Respectfully, this Court must disagree with *Chirinos*. *Chirinos* incorrectly conflates a return to 'custody' with a return to prior 'status.'"), *Quintero v.*

*Olson*, No. 4:26-CV-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026) (finding petitioner was "detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing"), *Ismoilov v. Maydak*, No. CV 26-185-DLB, 2026 WL 1587994, at *3 (E.D. Ky. June 3, 2026) (finding Sixth Circuit's reasoning in *Lopez-Campos* applied to petitioner who had been present in the interior for more than three years and whose parole had expired).

The same split has been recognized by district courts in our sister circuits across the country.[2] *See, e.g., Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *5 (D. Utah July 6, 2026) ("Recent litigation has highlighted a dispute regarding DHS's authority to re-detain parolees under 8 U.S.C. § 1225(b)(2) following the termination or expiration of their parole."); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 309 (E.D.N.Y. 2025) ("Although Rodriguez-Acurio is an applicant for admission, she clearly is not presenting herself at the border and was not recently apprehended just after entering, and thereby is not 'seeking admission' under Section 1225(b)(2)."), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) (collecting cases holding that "any determination as to [former parolee noncitizen's] detention must be conducted under the discretionary framework of Section 1226(a), which 'governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal'"); *Estebesov v. Olson*, No. 26-CV-1165, 2026 WL 1229622, at *3, n.2 (N.D. Ill. May 5, 2026) (holding "[t]he plain language of the relevant statute provides that upon termination of his parole, Petitioner was subject to mandatory detention under § 1225(b)" and noting that "the

[2] The unsettled state of the law is likely because, until the current executive administration, DHS often did not routinely pursue enforcement or detention actions against such parolees. *See* DHS Office of Inspector General, *DHS Needs to Improve Oversight of Parole Expiration for Select Humanitarian Parole Processes*, Report, No. OIG-25-30 (July 3, 2025) (finding that DHS lacked a well-defined process for addressing parole expirations and "did not initiate enforcement actions for parolees whose parole expired."); *see also* GAO Report, GAO-26-107765.

Fifth and Eighth Circuits adopted this minority view").

The Court is unpersuaded by Respondents' arguments distinguishing *Lopez-Campos.* Indeed, the plain language of the parole statute suggests that Guerra is on equal footing with the petitioners in *Lopez-Campos.* The parole statute provides that, upon termination of parole, a petitioner's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). And the process for detaining other applicants for admission within the United States is clear: "Section 1226 generally governs the process of arresting and detaining aliens once inside the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-02061-SL, 2025 WL 2959617, at *4 (N.D. Ohio Oct. 20, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)). *See Lopez-Campos*, 175 F.4th at 722 ("Put differently, § 1225(b)(2)'s mandatory detention scheme applies to certain noncitizens who seek admission into the country, whereas § 1226's permissive detention scheme applies to all other noncitizens pending a decision on their removability, with exceptions.").

True, Guerra's status as a former parolee arguably means that he indefinitely continues to be "an arriving alien." *See* 8 C.F.R. 1001(q). But just as an "'applicant for admission' is not necessarily 'seeking admission,'" *Lopez-Campos*, 175 F.4th at 732, neither is an "arriving alien." In any event, as the district court in *Jean* explained, *Lopez-Campos* stands for the proposition that "the entry fiction 'does not control' when an alien has 'resided within the United States for years.'" 2026 WL 1531056, at *3. *See also Ontiveros*, 2026 WL 1109422, at *4 (finding regulatory definition of "arriving alien" unpersuasive ); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry."), *vacated on other grounds,* 185 F.4th

1275 (D.C. Cir. 2026); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at * 15 (D. Vt. Dec. 11, 2025) (finding it "absurd" "unjust" and "counterintuitive" that the idea that the expiration of a petitioner's parole would place him in the "perpetual status as an 'arriving alien'").

Here, Guerra's physical presence in the country for years—even despite instruction from DHS in the June 2025 Notice of Termination of Parole that he "must leave the United States now if you have not otherwise obtained a lawful basis to remain in the United States" [DE 9-3 at 67]—demonstrates that he, just like petitioners in *Lopez-Campos*, is not "seeking admission." 18 U.S.C. § 1225(b)(2). *See* 175 F.4th at 723 ("[F]or a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer."); *Ismoilov*, 2026 WL 1587994, at *3 ("By remaining in the country undetected after his parole expired, Ismoilov obtained similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having knowledge of their whereabouts.").

Accordingly, the Court will follow those courts which have held that § 1226(a), and not § 1225, applies to noncitizens such as Guerra, who remain in the country after their parole expires. *See supra* (collecting cases).

**B. Laken Riley Act**

In the alternative, Respondents assert that Guerra is also mandatorily detained under 8 U.S.C. § 1226(c)(1). [DE 9 at 53].

Relevant here, Section 1226(c)(1) provides:

> The Attorney General *shall* take into custody any alien who. . .
>
> is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> is charged with, is arrested for, is convicted of, admits having committed, or admits

> committing acts which constitute the essential elements of any burglary, *theft*, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned for the same offense.

18 U.S.C. § 1226(c)(1)(E) (emphasis added). Respondents conclude that "because [Guerra] is inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and charged with theft, he is subject to mandatory detention under § 1226(c)(1)." [DE 9 at 54].

However, after Respondents asserted this alternative authority for detention in the Response to the Show Cause Order [DE 9], Guerra notified the Court that the charges against him had been dismissed. [*See* DE 17-1 at 140; DE 17-2 at 142]. Respondents have not disputed this assertion.

Because Guerra is not arrested, charged with, or convicted of any qualifying offense, Section 1226(c)(1)(E) does not apply. *See, e.g., Hairo v. Crawford*, No. 2:25CV704, 2026 WL 286176, at *3 (E.D. Va. Feb. 3, 2026) (collecting cases holding that the Laken Riley Act does not authorize mandatory detention after charges have been dismissed); *Helbrum v. Williams Olson*, No. 4:25-CV-00349-SHL-SBJ, 2025 WL 2840273, at *6 (S.D. Iowa Sept. 30, 2025) ("[B]ased on the recurring use of the present tense for each stage of the criminal process, the statute no longer requires mandatory detention when charges are resolved via acquittal or dismissal."); *Pereira v. Warden*, No. 1:26-cv-01480-DJC-JDP, 2026 WL 1272714, at *1, n.1 (E.D. Cal. May 8, 2026) ("The Government also argued that Petitioner is subject to mandatory detention under the Laken Riley Act, but as these charges were dismissed, the Laken Riley Act would not apply.") (citing *Singh v. Chestnut*, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026)). As a result, Guerra is properly detained, if at all, pursuant to § 1226(a).

**C. Due Process**

Guerra asserts two "causes of action": (1) Violation of the Due Process Clause, and (2) Violation of the INA. [DE 1 at 18–20]. The Court turns first to Guerra's contention that his continued detention without an individualized custody redetermination hearing violates due process under the Fifth Amendment. Because the Court concludes that it does, the Court need not reach Guerra's second basis for habeas relief.

Having determined that Guerra's detention is governed by § 1226(a), Respondents' arguments as to the due process required by § 1225(b)(2) or § 1226(c) are futile. Like the petitioners in *Lopez-Campos*, Guerra has "a liberty interest to be free from detention." *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest "without bond under § 1226(a) [is] a deprivation of liberty that violates [his] due process rights" and makes his continued detention unlawful. *Id.* The proper remedy for unlawful executive detention is release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention.").

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Guerra's Petition for Writ of Habeas Corpus [DE 1] and motion to expedite [DE 14] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner Guerra immediately because of the

unlawful detention in violation of his due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket **by October 16, 2026.**

Rebecca Grady Jennings, District Judge
United States District Court

October 8, 2026

Cc: Counsel of record